United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,                Civil No.

vs.                                         Honorable:

Dell PowerEdge Server, Serial
Number JNFHSW1, and

Any and All Cryptocurrency or
Other Digital Assets Contained
in Virtual Currency Wallets Residing
on the Dell PowerEdge Server, Serial
Number JNFHSW1,

        Defendants *in rem*.

## Complaint for Forfeiture

Now comes Plaintiff, the United States of America, by and through its undersigned attorneys, and states upon information and belief in support of this Complaint for Forfeiture as follows:

### JURISDICTION AND VENUE

1. This is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A), resulting from a violation or violations of 18 U.S.C. § 1960, seeking forfeiture of Defendants *in rem*.

2.     This Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345 as this action is being commenced by the United States of America as Plaintiff.

3.     This Court has jurisdiction over this forfeiture action pursuant to 28 U.S.C. § 1355(b)(1)(A) as the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the United States' claims occurred, and a substantial part of the property that is the subject of this action is situated, in the Eastern District of Michigan.

5.     Venue is also proper before this Court pursuant to 28 U.S.C. §§ 1395(a) and (c) as the action accrued and the Defendants *in rem* are presently located in the Eastern District of Michigan.

## **DEFENDANTS *IN REM***

6.     The Defendants *in rem* consist of the following:

    a.    Dell PowerEdge Server, Serial Number JNFHSW1 ("Defendant Server"), and

    b.    Any and All Cryptocurrency Or Other Digital Assets Contained in Virtual Currency Wallets Residing on the Dell PowerEdge Server, Serial Number JNFHSW1 ("Defendant Cryptocurrency").

7. For the purpose of this complaint cryptocurrency and other digital assets will be collectively referred to as "cryptocurrency" or "virtual currency."

8. The United States seized the Defendant Server on November 21, 2017, from the premises of Community ISP, Inc., in Toledo, Ohio, pursuant to search warrant issued by a magistrate judge in the U.S. District Court for the Northern District of Ohio. The Defendant Cryptocurrency was held in virtual currency wallets located on the Defendant Server at the time of the seizure. The Defendants *in rem* are currently in the custody of the Federal Bureau of Investigation ("FBI"), in Detroit, Michigan.

## UNDERLYING CRIMINAL STATUTES

9. 18 U.S.C. § 1960 prohibits knowingly conducting, controlling, managing, supervising, directing, or owning all or part of an unlicensed money transmitting business.

10. 18 U.S.C. § 1960 defines an "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and--

**(A)** is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

**(B)** fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

**(C)** otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity.

11. 18 U.S.C. § 1960 defines "money transmitting" to include transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier

## STATUTORY BASIS FOR CIVIL FORFEITURE

12. 18 U.S.C. § 981(a)(1)(A) provides for the forfeiture of:

Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.

## FACTUAL BASIS IN SUPPORT OF FORFEITURE

13. The Defendants *in rem* are forfeitable to the United States of America pursuant to 18 U.S.C. 981(a)(1)(A). Evidence supporting the forfeiture of the Defendants *in rem* includes, but is not limited to, the following:

**I.    Background on Virtual Currency and Domain Names**

14. Virtual currency is a type of electronic asset that is circulated over the Internet as a form of value. Bitcoin is one common variety of virtual currency. Bitcoin, like many other types of virtual currency, is not issued by any

government, bank, or company, but rather is controlled through computer software operating via a decentralized, peer-to-peer network.

15. To acquire virtual currency, a typical user will purchase it from a virtual currency exchange. A virtual currency exchange is a business that allows customers to trade virtual currencies for other forms of value, such as conventional fiat money (e.g., U.S. dollar, Russian ruble, €). When a user wishes to purchase virtual currency from an exchange, the user will customarily send payment in the form of fiat currency, often via bank wire, or other virtual currency to an exchange, for the corresponding quantity of virtual currency, based on a fluctuating exchange rate. The exchange, usually for a commission, will then either sell the user virtual currency from the exchange's reserves or will attempt to broker the purchase with another user who is trying to sell virtual currency. The purchased units of virtual currency are then transferred to the purchaser, allowing the user to conduct transactions with other virtual currency users. Exchanges may also allow users to exchange one form of virtual currency for another. Each exchange option (i.e., U.S. Dollar to bitcoin, bitcoin to litecoin, litecoin to Euros) is commonly called a "currency pair."

16. Virtual currency exchanges doing business in the United States are regulated under the Bank Secrecy Act (BSA) and must take a variety of steps to prevent money laundering. 31 U.S.C. § 5330 and 31 C.F.R § 1022.380(a) provide,

5

in relevant part, that any money services business must register with the Financial Crimes Enforcement Network. MSB regulations specifically apply to virtual currency exchanges. The regulation also requires MSBs develop, implement, and maintain an effective anti-money laundering program that is reasonably designed to prevent the MSB from being used to facilitate money laundering. 18 U.S.C. § 1960, criminalizes the operation of an unlicensed MSB.

17. A domain name is a simple, easy-to-remember way for humans to identify computers on the Internet, using a series of characters (e.g., letters, numbers, or other characters) that correspond with a particular IP address. For example, "usdoj.gov" and "cnn.com" are domain names.

## II. Investigation

18. In 2015 the FBI began investigating an intrusion into a Michigan-based virtual currency exchange, which resulted in the theft of virtual currency.

19. Over the course of the investigation, the FBI identified an individual associated with the theft of the virtual currency (hereinafter "Target"), as an individual residing in Toledo, Ohio.

20. On November 17, 2017, U.S. District Court Magistrate Judge James R. Knepp, II issued a warrant in the Northern District of Ohio to search the Target's residence for evidence of the theft of cryptocurrency.

21.     A search of the Target's residence was conducted on November 21, 2017, at which time federal law enforcement identified evidence that the Target was operating a cryptocurrency exchange called "CoinGather."

### III.    CoinGather

22.     CoinGather was launched in 2014 and allowed users to buy and sell cryptocurrencies, and to transfer cryptocurrencies to other CoinGather users. As of August 2017, CoinGather supported the trading of over 90 cryptocurrency pairs.

23.     CoinGather only allowed for transactions involving cryptocurrency; the exchange did not allow for conversion to or from fiat currency (e.g. U.S. dollars).

24.     CoinGather collected a commission on each transaction, charging 0.25% for each buy or sell order and between 0.1% and 1 % for withdrawal fees.

25.     CoinGather was accessible through the internet via its website, coingather.com.

26.     Individuals became CoinGather users by creating a free account on the website.

27.     Individuals creating a CoinGather account were not required to supply verified identity documentation.

28. CoinGather ceased operation on November 21, 2017.

29. During the time CoinGather was generally accessible to the public, from 2014 through November 21, 2017, it was never registered as a Money Service Business with the U.S. Dept. of Treasury, Financial Crime Enforcement Network.

30. During the time CoinGather was generally accessible to the public, from 2014 through November 21, 2017, it was not a licensed or registered business entity with the Ohio Secretary of State.

31. The CoinGather cryptocurrency exchange was hosted on a computer server (i.e. Defendant Server) located on the premises of Target's employer, Community ISP, Inc., in Toledo, Ohio.

32. The Target had created a direct connection between his residence, from where he operated CoinGather, to the Defendant Server located on the premises of Community ISP, Inc.

33. The Target gave the FBI verbal and written consent to search his electronically stored data located on the Defendant Server at Community ISP, Inc.

34. Community ISP, Inc. gave the FBI verbal and written consent to search all relevant devices, including the Defendant Server, which housed the virtual machines running the CoinGather cryptocurrency exchange.

35. On November 22, 2017, the FBI took possession of the Defendant Server, which resulted in the CoinGather cryptocurrency exchange no longer being publically accessible through the internet.

36. On July 25, 2018, the United States obtained a warrant from U.S. Magistrate Judge Elizabeth Stafford, to search the Defendant Server.

37. During the search of the Defendant Server, the United States identified over 20,000 registered profiles.

38. The identified third-party virtual currency wallets contain approximately 157 different cryptocurrencies, approximately 124 of which are cryptocurrencies of value.

39. The total value of the cryptocurrency in all third-party virtual currency wallets is incalculable given the volume of users and currencies. The total value is estimated to be in the millions of dollars.

40. On March 19, 2018, the United States took possession of the domain coingather.com, and created a "splash page" stating the domain had been seized by the FBI pursuant to 18 U.S.C. §§ 1960, 981, and 982, and directing individuals with additional information to a government website.

41. In response to the "splash page," the United States has received at least 167 complaints from users in at least 30 countries.

42.     The United States has named Defendant Cryptocurrency as a part of Defendants *in rem* to ensure a formal process to adjudicate the ownership interests in the various cryptocurrencies.

43.     The Defendant Server and Defendant Cryptocurrency were involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1960, and therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

## **CLAIM**

44.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs above.

45.     Defendants *in rem* are forfeitable to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A) because they constitute property involved in a transaction or attempted transaction in 18 U.S.C. § 1960, or any property traceable to such property.

## **CONCLUSION AND RELIEF**

WHEREFORE, Plaintiff respectfully requests that a warrant for arrest of the Defendants *in rem* be issued; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that judgment be entered declaring the Defendants *in rem* to be condemned and forfeited to the United States for disposition according to law; and that the United States be

granted such further relief as this Court may deem just and proper together with costs and disbursements of this action.

Dated: October 1, 2019                     Respectfully submitted,

                                                Matthew Schneider
                                                United States Attorney

                                                /s/ Shankar Ramamurthy
                                                Shankar Ramamurthy
                                                Assistant United States Attorney
                                                211 W. Fort Street, Suite 2001
                                                Detroit, Michigan 48226
                                                (313) 226-9562
                                                Shankar.Ramamurthy@usdoj.gov
                                                (IL 6306790)

## VERIFICATION

I, ████████████, state that I am a Special Agent of the U.S. Federal Bureau of Investigation. I have read the foregoing Complaint for Forfeiture, and declare under penalty of perjury that the facts contained therein are true and correct to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement agents.

████████████████████
FBI Special Agent
Dated: 9/30/2019